**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JENNY ABRAMSON,

            Plaintiff,

            v.

AFFINITY FEDERAL CREDIT UNION,

            Defendant.

Civil Action No. 20-13104 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendant Affinity Federal Credit Union's ("Affinity") Motion to Dismiss Plaintiff Jenny Abramson's ("Abramson") putative class action Complaint. (ECF No. 17.) Abramson opposed (ECF No. 21), and Affinity replied (ECF No. 27). Abramson also submitted supplemental authority in support of her opposition to Affinity's Motion. (ECF Nos. 25, 26, 31.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants in part and denies in part Affinity's Motion.

**I.    BACKGROUND**

    Abramson is a North Carolina resident who has a checking account with Affinity, a New Jersey-based credit union. (Compl. ¶¶ 6–7, ECF No. 1.) The parties' relationship is governed by Affinity's Account Agreement (the "Agreement"). (*See id.* ¶ 29; Agreement, Ex. A to Compl., ECF No. 1-2.) Abramson alleges that Affinity breached the Agreement by improperly assessing (1) overdraft fees ("OD Fees") on what Abramson refers to as Authorize Positive, Purportedly

Settle Negative ("APPSN") transactions and (2) multiple fees, including OD Fees and insufficient funds fees ("NSF Fees"), on the same item. (Compl. ¶¶ 1, 11.)

### A.  OD Fees on APPSN Transactions

Abramson alleges that, contrary to the Agreement, Affinity imposes a $33 OD Fee on certain debit transactions that do "not actually overdraw checking accounts"—APPSN transactions. (*Id.* ¶¶ 1, 11–14.)

According to Abramson, an APPSN transaction occurs when (1) Affinity authorizes a debit card transaction made by an accountholder with sufficient funds in her account to cover that transaction, but (2) due to intervening transactions, the initial transaction later settles into a negative balance, which triggers a $33 OD Fee.[1] (*Id.* ¶¶ 12–14.) Abramson asserts that those OD Fees are improper because at the point of authorization, Affinity "sequesters the funds needed to pay" that particular transaction from the accountholder's account. (*Id.* ¶ 15.) Due to the debit hold, Abramson argues, an "account[] will always have sufficient funds available to cover th[ose] transactions" yet "Affinity assesses OD Fees on [them] anyway." (*Id.* ¶¶ 12, 32.)

"As examples," Abramson avers that on three occasions in September and October of 2018, she "was assessed OD Fees on debit card transaction[s]," even though those "transactions had been authorized, prior to that day, on a sufficient available balance." (*Id.* ¶ 58.)

---

[1] The Complaint asserts that debit card transactions occur in two parts: authorization followed by settlement. (*See* Compl. ¶¶ 24–27.) Authorization occurs when Affinity approves a transaction between an accountholder and a merchant. (*Id.* ¶¶ 24–25.) Settlement occurs "[s]ometime thereafter," when Affinity transfers the accountholder's funds to the merchant. (*Id.* ¶ 26.)

### B. Multiple NSF Fees on the Same Item

Abramson alleges that although the Agreement allows Affinity to charge only a single $33 NSF Fee when a transaction is declined for insufficient funds, Affinity imposes an additional NSF Fee each time that same transaction is reprocessed for payment. (*Id.* ¶¶ 71–81.) In Abramson's view, the Agreement provides that the original transaction and all subsequent attempts to reprocess that transaction constitute the same "item." (*Id.* ¶¶ 83–84.)

Abramson points to one transaction as an example where Affinity allegedly extracted multiple NSF Fees on the same item. On December 20, 2018, Affinity charged Abramson an NSF Fee for an ACH payment that was declined for insufficient funds. (*Id.* ¶¶ 64–65.) The following day, however, Affinity imposed another NSF Fee when the same item was reprocessed for payment because Abramson's account still lacked sufficient funds to cover the transaction. (*Id.* ¶ 66.) Affinity did so again two days later for the same reason. (*Id.* ¶ 67.) "In sum, [Affinity] assessed [Abramson] $99 in fees to attempt to process a single payment." (*Id.* ¶ 68.) According to Abramson, the latter two NSF Fees violate the Agreement's promise to assess a single NSF Fee "per item." (*Id.* ¶¶ 65–68, 81.)

### C. Procedural History

On September 23, 2020, Abramson filed a two-count putative class action Complaint against Affinity. (*See* Compl.) Count One asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 119–30.) Count Two alleges a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.* (*Id.* ¶¶ 131–34.) On January 15, 2021, Affinity moved to dismiss the Complaint pursuant to Rule 12(b)(1)[2] for lack of standing and Rule 12(b)(6) for failure to state a claim. (*See* Def.'s Moving Br., ECF No. 17.)

---

[2] All references to a "Rule" hereinafter refer to the Federal Rules of Civil Procedure.

Abramson opposed on February 16, 2021, (*see* Pl.'s Opp'n Br., ECF No. 21), and Affinity replied on March 15, 2021 (*see* Def.'s Reply Br., ECF No. 27). Around the same time, Abramson submitted supplemental authority in further support of her opposition to Affinity's Motion. (*See* ECF Nos. 25, 26, 31.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (alteration in original) (citation omitted). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citation omitted). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (alterations in original) (internal quotations and citation omitted).

When reviewing a facial challenge, the court must "accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 561 (3d Cir. 2005) (citation omitted). On the other hand, when reviewing a factual challenge, the court may "consider evidence outside the pleadings" and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citations omitted).

### B.  Rule 12(b)(6)

A district court conducts a three-part analysis when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). The "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

### III.  DISCUSSION

Affinity advances four arguments in support of dismissal: (1) Abramson lacks standing to pursue the APPSN claim; (2) the Agreement expressly authorizes Affinity to assess an NSF Fee on the same transaction each time that transaction is reprocessed; (3) Abramson's breach of the covenant claim fails as duplicative of her breach of contract claim; and (4) Abramson's NJCFA claim fails for the same reason her NSF Fee claim fails. (Def.'s Moving Br. 7–17.) The Court addresses each argument in turn.

### A.     Abramson Fails to Establish Standing for the APPSN Transactions

Affinity seeks to dismiss Abramson's APPSN claim pursuant to Rule 12(b)(1) for lack of standing. (Def.'s Moving Br. 8.) Specifically, Affinity argues that Abramson lacks standing because she "was never charged a fee on an APPSN [t]ransaction." (*Id.* at 7–8.)

#### 1.     Standards of Review

##### (a)     12(b)(1) Factual Challenge

As a preliminary matter, the Court notes that neither party addresses whether Affinity's Rule 12(b)(1) Motion presents a facial or factual attack. The latter "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Aichele*, 757 F.3d at 358). As discussed below, Affinity submitted a declaration from its assistant vice president and Abramson's account statements to refute Abramson's allegation that she was charged OD Fees on APPSN transactions. Thus, because Affinity's submissions challenge Abramson's allegations of injury, the Court construes Affinity's Motion as a factual attack on standing. *See id.* at 348 (finding that the appellee "mounted a factual challenge to subject matter jurisdiction" because the appellee "submitted a signed declaration disputing [the appellant's] factual allegations"). Consequently, Abramson bears the burden of showing "that jurisdiction does in fact exist," and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1997).

##### (b)     Standing

To establish standing, a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations

omitted). Here, Affinity challenges only the first requirement, injury in fact. (Def.'s Moving Br. 7–8.) "To show injury in fact, a plaintiff must allege 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Leyse v. Bank of Am. Ass'n*, No. 20-1666, 2021 WL 1997452, at \*2 (3d Cir. May 19, 2021) (quoting *Spokeo*, 136 S. Ct. at 1547). "The requirements for standing do not change in the class action context." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). Thus, "[n]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

### 2. Abramson Fails to Establish Injury in Fact

Abramson's Complaint devotes approximately ten pages to providing a general description of Affinity's alleged practice of imposing OD Fees on APPSN transactions in violation of the Agreement. (*See* Compl. 3–12.) Then, in a single paragraph asserted under the header "Plaintiff's Debit Card Transactions," Abramson states the following with respect to the OD Fees that she allegedly incurred: "As examples, on October 9, 2018, October 23, 2018, and September 19, 2018, Plaintiff was assessed OD Fees on debit card transactions, despite the fact that the transactions had been authorized, prior to that day, on a sufficient available balance." (*Id.* ¶ 58.) Besides this, Abramson alleges nothing else regarding the OD Fees that she personally incurred.

In support of dismissal, Affinity submitted a certification from its Assistant Vice President, Jeannie DeCarlo ("DeCarlo"), and redacted versions of Abramson's account statements that purportedly disclose the above-referenced transactions. (DeCarlo Decl., ECF No. 17-2; Account Statements, Exs. B & C to DeCarlo Decl., ECF No. 17-2.) According to DeCarlo, those statements

demonstrate that "[n]one of the transactions listed by Plaintiff were" APPSN transactions because they were not "authorized positive; they were all authorized negative and presented and paid with an insufficient balance." (DeCarlo Decl. ¶ 7.) Affinity, therefore, contends that dismissal is warranted because Abramson "never suffered an injury-in-fact as the result of any so-called APPSN [t]ransaction scheme." (Def.'s Moving Br. 8.) Abramson's Opposition Brief does little to support a contrary finding. As in the Complaint, Abramson's Opposition Brief devotes approximately ten pages to providing a general description of Affinity's alleged misconduct along with several cases that have considered similar APPSN claims, all before briefly addressing the issue of standing—Affinity's only argument for dismissing the APPSN claim—in two paragraphs. (Pl.'s Opp'n Br. 19–32.)

In the first, Abramson posits that "Affinity's 'standing' argument is merely a merits argument in disguise" because it "relies on information that is outside of the Complaint and raises factual issues that are inappropriate for resolution on a motion to dismiss." (*Id.* at 31.) According to Abramson, "[t]he account statements are outside the four corners of the Complaint and this Court should, therefore, decline to consider them." (*Id.* at 31 n.8.) Abramson's argument lacks merit. "[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'"[3] *Davis*, 824 F.3d at 346 (alteration in original) (quoting *Aichele*, 757 F.3d at 358).

---

[3] The account statements would have been subject to consideration even if Affinity had raised a facial challenge. "[T]he standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) (citing *Mortensen*, 549 F.2d at 891). And it is settled that when deciding a Rule 12(b)(6) motion, courts may consider "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Abramson does not dispute that the Complaint relies on the transactions reflected in those statements to bring her APPSN claim. In fact, those transactions are the only transactions in the Complaint that pertain to Abramson personally.

8

Thus, the Court may consider the account statements in determining whether Abramson established standing.

The redacted account statements indicate that Abramson was assessed OD Fees on certain transactions that overdrew her account. (Statements *12, *16–17.) Those statements do not, on their face, contradict Affinity's representation that none of the disputed transactions were APPSN transactions because they were "authorized negative and presented and paid with an insufficient balance." (DeCarlo Decl. ¶ 7.) Other than conclusory statements, Abramson offered no competing evidence or information to contest Affinity's representation. Instead, in the second paragraph, Abramson points to the allegations in the Complaint to support her argument for standing. Specifically, Abramson argues that she "has standing because [the Complaint] alleges that she was victimized by Affinity's conduct" and that "she was charged numerous APPSN fees." (Pl.'s Opp'n Br. 32.) Abramson also notes that the "specific examples" of transactions provided in the Complaint were "meant to be just that: examples." (*Id.*) But Abramson's reliance on those allegations is misplaced, particularly because "no presumptive truthfulness attaches to" the Complaint's allegations, *Davis*, 824 F.3d at 346, and Abramson offered nothing else to contest Affinity's 12(b)(1) Motion. Without more, the Court cannot find that Abramson met her burden to establish standing. The Court, accordingly, grants Affinity's Motion on this issue.

### B. The Agreement Does Not Expressly Authorize the Assessment of Multiple NSF Fees on the Same Item

Affinity argues that Abramson's breach of contract claim regarding NSF Fees should be dismissed because Affinity's "conduct was expressly contemplated by the . . . Agreement and consistent with its terms." (Def.'s Moving Br. 11.)

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating

the claim performed its own contractual obligations."[4] *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted). Here, Affinity posits that Abramson fails to satisfy prong two—breach of contract—because the Agreement expressly allows Affinity to assess multiple NSF Fees when transactions are reprocessed for payment. (Def.'s Moving Br. 9–11.)

"On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach. The Court must first determine whether the contractual language is ambiguous." *Galgano v. TD Bank, N.A.*, No. 20-5623, 2021 WL 2472331, at *3 (D.N.J. June 17, 2021) (citations omitted). "Whether a [contract] term is clear or ambiguous is . . . a question of law." *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275, 282 (D.N.J. 1992). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Id.* (citation omitted). If a contract is found to be "ambiguous, then its precise meaning would be a question for the fact-finder to answer." *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. 08-3529, 2009 WL 2255727, at *7 (D.N.J. July 27, 2009) (citation omitted).

Here, the parties' dispute over whether the Agreement authorizes Affinity to assess multiple NSF Fees stems from their disagreement over the meaning of the term "item." Abramson contends that the Agreement is ambiguous and takes the position that the original transaction and all subsequent attempts to reprocess that same transaction for payment constitute a single "item" that is subject to a single NSF Fee. (Compl. ¶¶ 75–81; Pl.'s Opp'n Br. 8–14.) In support, Abramson points in part to a provision in Affinity's Overdraft Disclosure that states: "If an item overdraws your account, whether we pay or return an item, your account will be assessed a fee, either [an OD Fee or NSF Fee] but you will not be charged for both. The fee is the same for paying or returning

---

[4] The parties do not dispute that New Jersey law applies.

the item. ***Our current charge per item is $33***." (Pl.'s Opp'n Br. 9 (quoting Overdraft Disclosure *5, Ex. A to DeCarlo Decl., ECF No. 17-2).) In Abramson's view, the quoted language demonstrates Affinity's promise to charge a single NSF Fee "per item," even if "it is returned one time or many times." (*Id.*)

For its part, Affinity argues that under the "plain terms" of the Agreement, each attempt to reprocess a transaction constitutes a separate "item" that is subject to an additional fee. (Def.'s Moving Br. 11.) In doing so, however, Affinity does not point to any provision in the Agreement that provides a standalone definition for "item." Nor does Affinity address the above-quoted term "per item" that appears in its Overdraft Disclosure—a document that Affinity submitted with its Motion. Instead, Affinity claims that the Agreement expressly permits the disputed conduct based on the following: The "Agreement specifically states '[y]ou agree that we may charge fees for overdrafts.' Additionally, the . . . Agreement provides that Affinity may charge an NSF or OD Fee on any 'item,' when the account holder's available balance is not sufficient to cover the transaction. And that item may include 'checks, orders and election transactions.'" (*Id.* at 9 (second alteration in original) (quoting Agreement *8–9).) From this, Affinity concludes that "under the *plain language* of the . . . Agreement, *each* draft instruction resubmitted to TD Bank [sic] is a *separate* '*item*,' potentially subject to an NSF or OD Fee." (*Id.* at 9–10 (emphasis added).) The Court is unpersuaded. The cited provisions, even when read in their entirety, simply do not expressly provide that the same transaction becomes a new item when reprocessed. Nor does Affinity cite any cases to support its interpretation of the Agreement. That is likely because, in similar cases, the overwhelming majority of courts have found that the term "item" is ambiguous and have denied motions to dismiss on that basis. *See Richard v. Glens Falls Nat'l Bank*, No. 20-734, 2021 WL 810218, at *12 (N.D.N.Y. Mar. 3, 2021) (collecting cases).

*Richard* is instructive. There, as in this case, the agreement provided that an NSF Fee may be assessed "per item" but did not provide a standalone definition for "item" nor a "provision making clear that a separate NSF Fee may be charged for each presentment of the same transaction." *Id.* at *11. "[C]onsistent with the weight of authority," the court found that the agreement was "sufficiently ambiguous for [the] [p]laintiff's claim to survive a motion to dismiss." *Id.* at *12. In doing so, the court noted that "[w]hen analyzing similar account agreements that allow NSF Fees to be assessed on a 'per item' basis, courts have frequently found the term 'item' to be ambiguous in the absence of language clearly defining it, and have denied motions to dismiss on that basis." *Id.* (collecting cases).

This Court reaches the same conclusion and finds that the term "item" is ambiguous regarding whether the reprocessing of a transaction is a separate item (as Affinity argues) or is part of the same initial transaction (as Abramson argues). The Court, accordingly, denies Affinity's Motion to Dismiss Abramson's breach of contract claim as to NSF Fees.

  **C.**  **Abramson's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is Duplicative of Her Claim for Breach of Contract.**

"New Jersey law holds that every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract's terms. A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*, No. 15-1961, 2015 WL 13229231, at *3 (D.N.J. Nov. 20, 2015) (citing *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001)). "A breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261 (N.J. 2002)). In

other words, "the conduct alleged to be a breach of the implied covenant of good faith and fair dealing must be distinct from the conduct alleged to constitute a breach of contract." *Ricketti v. Barry*, No. 13-6804, 2015 WL 1013547, at *7 (D.N.J. Mar. 9, 2015) (citations omitted).

Here, Abramson's breach of the implied covenant claim fails because it arises out of the same conduct underlying her breach of contract claim. Joined together into a single count entitled "breach of contract, including breach of the covenant of good faith and fair dealing," Count One alleges that Affinity breached the implied covenant by "abus[ing] the discretion it granted to itself when it charged OD Fees on transactions that did not overdraw an account and when it charged multiple fees on the same item"—the same conduct underlying her breach of contract claim. (Compl. ¶¶ 122–27.) "Nearly identical claims are regularly dismissed in similar actions." *See Petrey v. Visions Fed. Credit Union*, No. 20-1147, 2021 WL 2364971, at *5 (N.D.N.Y. June 9, 2021) (granting motion to dismiss breach of implied covenant claim where the defendant allegedly "breached the covenant of good faith and fair dealing through its NSF fee policies and practices" because that was "the same conduct underlying [the plaintiff's] breach of contract cause of action") (collecting cases). The Court, accordingly, grants Affinity's Motion to Dismiss Abramson's breach of the covenant of good faith and fair dealing claim.

   D.   **NJCFA Claim**

Affinity's argument to dismiss Abramson's NJCFA claim can be addressed in short. Affinity's sole argument is that Abramson's NJCFA claim fails for the same reason that her NSF Fee claim fails: that the "Agreement expressly permits the very conduct with respect to multiple fees on the reprocessing of the same item." (Def.'s Moving Br. 16–18.) Having concluded otherwise, the Court denies Affinity's Motion to Dismiss Abramson's NJCFA claim.

IV.   **CONCLUSION**

For the reasons set forth above, Affinity's Motion to Dismiss is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

                                                                                                            /s/ Michael A. Shipp
                                                                                                            **MICHAEL A. SHIPP**
                                                                                                            **UNITED STATES DISTRICT JUDGE**