# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JENNY ABRAMSON, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 3:20-cv-13104-MAS-ZNQ |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) | |
| AFFINITY FEDERAL CREDIT UNION, | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

#13539820

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

SUMMARY OF THE SETTLEMENT ...................................................................... 4

LEGAL ARGUMENT ............................................................................................... 8

I.      STANDARD OF REVIEW FOR PRELIMINARY APPROVAL........................ 8

II.     THE PROPOSED SETTLEMENT SATISFIES THE PRELIMINARY
FAIRNESS STANDARD ......................................................................... 9

      A.     The Proposed Settlement Resulted from Arm's-Length Negotiations ..... 10

      B.     The Discovery Produced in this Matter Was Sufficient for the Parties
to Understand the Litigation's Facts and Legal Issues ............................ 10

      C.     Counsel Are Highly Experienced in Class Action Litigation.................. 12

III.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
PURPOSES.......................................................................................... 13

      A.     The Proposed Class is Too Numerous for Joinder................................... 13

      B.     There Are Numerous Questions of Law and Fact Common to the
Class ....................................................................................................... 14

      C.     The Class Representatives' Claims are Typical of the Absent
Settlement Class Members ...................................................................... 14

      D.     The Plaintiff and Class Counsel Have and Will  Continue to
Adequately Represent the Class.............................................................. 14

      E.     The Rule 23(b)(3) Factors Are Met.......................................................... 15

IV.    THE PROPOSED NOTICE TO THE CLASS SATISFIES ALL
APPLICABLE REQUIREMENTS INCLUDING DUE PROCESS................... 16

V.     NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT ............... 17

VI.    THE PROPOSED SCHEDULE OF EVENTS .................................................... 17

VII.   CONCLUSION................................................................................................ 18

#13539820

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ....................................................................... 14

*Bodnar v. Bank of Am., N.A.*,
    No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) ................................. 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...................................................................................... 17

*Gates v. Rohm and Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008)................................................................. 11

*Hawthorne v. Umpqua Bank*,
    No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) ................... 11

*In re American Family Enterprises*,
    256 B.R. 377 (D.N.J. 2000) ......................................................................... 12

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ................................... 9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir 2001) ......................................................................... 9

*In re Checking Account Overdraft Litig.*,
    No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562 (S.D. Fla. Aug. 2, 2013) ............. 11

*In re Checking Account Overdraft Litig.*,
    No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690 (S.D. Fla. May 22, 2015)............. 11

*In re Computron Software, Inc., Sec. Litig.*,
    6 F.Supp.2d 313 (D.N.J. 1998) ................................................................... 8

*In re General Motors Corp Pick-Up Truck*,
    55 F.3d 768 (3d. Cir. 1995) ......................................................................... 15

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................... 8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ................... 12, 13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................. 8, 9, 13, 14

*Johnston v. HBO Film Mgm't., Inc.*,
    265 F.3d 178 (3d Cir. 2001) ........................................................ 14, 15

*Jones v. Commerce Bancorp Inc.*,
    No. 05-600, 2007 WL 2085357 (D.N.J. July 16, 2006) ........................ 8, 9

*Mazon v. Wells Fargo Bank, N.A.*,
    2011 WL 6257149 (D.N.J. Dec. 14, 2011) ........................................ 8

*Mehling v. N.Y. Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007) .................................................... 9

*Mejdrech v. Met-Coil Systems Corp.*,
    319 F.3d 910 (7th Cir. 2003) ........................................................ 16

*Mullane v. Central Hanover Navy Federal & Trust Co.*,
    339 U.S. 306 (1950) .................................................................... 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ........................................................ 14

*Roberts v. Capital One*,
    16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) .................... 11

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ............................................ 12

*Smith v. Prof'l Billing & Mgm't Servs., Inc.*,
    No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) .................... 9

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ........................................................ 13

*Sullivan v. D.B. Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................ 15

**Statutes**

28 U.S.C. § 1715(b) ........................................................................ 17

28 U.S.C. § 1715(b)(1)-(8) .............................................................. 17

**Rules**

Fed R. Civ. P. 23(b)(3)(1) .............................................................. 15

Fed. R. Civ. P. 23 ........................................................ 8, 13, 16, 17

Fed. R. Civ. P. 23(b) .................................................................... 13

iii

Fed. R. Civ. P. 23(c)(2) ........................................................................................... 17

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 3

Federal Rules of Civil Procedure 23(a) ............................................................... 2, 13

Rule 23(a)(2) ........................................................................................................... 14

Rule 23(a)(3) ........................................................................................................... 14

Rule 23(b)(1) ........................................................................................................... 16

Rule 23(b)(2) ........................................................................................................... 16

Rule 23(e)(1)(B) ...................................................................................................... 16

**Other Authorities**

*Manual for Compl. Lit.* § 21.312 ........................................................................... 16

*Manual for Compl. Litig.*, § 21.311 ....................................................................... 17

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2008) .................................... 8

## PRELIMINARY STATEMENT

Plaintiff Jenny Abramson, on behalf of herself and a proposed class of current and former customers of Defendant Affinity Federal Credit Union ("Affinity FCU"), respectfully submits this memorandum in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement[1]—which was the result of hard-fought, arms' length negotiations between experienced counsel and facilitated by mediator Hon. Thomas W. Cavanaugh (Ret.)—provides substantial monetary relief for the benefit of the Settlement Class in the form of $700,000 in relief to the Class, which includes a Settlement Fund of $500,000 and forgiveness of Uncollected Retry NSF Fees of $200,000. This amounts to a recovery of 100% of the Settlement Class' most likely damages at trial.

Plaintiff alleges that Defendant improperly charges overdraft and/or returned item fees ("Retry Fees") on the same item, e.g., Automated Clearing House ("ACH") and check transactions that were re-submitted by a merchant after being returned by Defendant for insufficient funds, and that its uniform, companywide practices constitute a breach of contract including the covenant of good faith and fair dealing. Defendant denies the allegations in the Complaint, but given the risks, uncertainties, and burdens of litigation, has agreed to settle according to the terms of the Agreement. The settlement achieved by the parties—which after significant damages-related discovery and an extended, arms-length negotiation process—guarantees a substantial monetary benefit for Settlement Class Members.

Subject to the Court's approval, the Settlement Fund will also be used to pay: a court-approved service award to Plaintiff to compensate her for the time she spent, the risk she incurred, and the benefit she obtained for the Class by serving as a class representative; Class

---

[1] The capitalized terms in this Memorandum have the same meaning as those defined in the Settlement Agreement, attached hereto as ***Exhibit A***.

1

Counsel's attorneys' fees of no more than 33-1/3% of the Value of the Settlement; Class Counsel's costs incurred in prosecuting this action; and the costs of notice and settlement administration. The Parties have agreed to a robust notice plan designed to afford all members of the Settlement Class due process and advise them of their rights under the Agreement.

One of the hallmark components of the Settlement is that Settlement Class Members will not have to file claim forms to receive the Settlement's benefits—payments will be made automatically, either by a credit (or direct deposit) to their accounts or by check—and no portion of the settlement funds will revert to Affinity FCU. In addition, Affinity FCU has agreed to undertake a significant amount of data retrieval and analysis in order to effectuate notice—at a significant savings to the Settlement Class. As explained below, the Settlement terms are well within the range of reasonableness and are consistent with applicable law. The Settlement satisfies all Third Circuit criteria for Preliminary Approval.

Class Counsel were able to accomplish this substantial and meaningful relief for the Settlement Class Members in an efficient and timely manner based in large part on their skill and expertise in pursuing class action bank fee litigation in jurisdictions across the country. Joint Declaration of Jeffrey Kaliel and Taras Kick ("Joint Decl." ¶ 8). The work, positive case law, and expertise developed in those cases—along with the briefing and important discovery undertaken in this matter—ensured Class Counsel and Plaintiff were fully informed of the strengths, weaknesses, and damages at issue in the instant litigation prior to commencing settlement discussions here.

Accordingly, Plaintiff respectfully requests that this Court enter an order that will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) appoint

Plaintiff as Class Representative; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the notices; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay all deadlines in the Action pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms and attorneys identified herein; and (8) schedule a Final Approval Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2020, Plaintiff Jill Abramson filed a putative class action Complaint in the District of New Jersey, entitled *Abramson v. Affinity Federal Credit Union.*, No. 3:20-cv-13104-MAS-ZNQ. On behalf of a putative nationwide class, the Complaint asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the New Jersey Consumer Fraud Act.

On January 15, 2021, Defendant filed a Motion to Dismiss Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed the Motion on February 16, 2021. The Court granted in part and denied in part the Motion on August 31, 2021. Subsequently, the Parties engaged in formal discovery. They also engaged in an informal exchange of information, in the context of seeking to reach a resolution to the claims through direct negotiations.

While discovery was ongoing, the Parties attended a mediation with Hon. Thomas W. Cavanaugh (Ret.). The mediation was unsuccessful, and the Parties subsequently returned to discovery. In August, 2022, and after further data analysis, the Parties re-engaged on settlement discussions. On October 15, 2022, the Parties reached agreement in principle to resolve this matter. Thereafter, the Parties negotiated the details of this final Settlement Agreement and Releases and the notice plan.

3

<u>**SUMMARY OF THE SETTLEMENT**</u>

The Parties have entered into the Agreement, which completely resolves this Action. The Agreement includes the following key terms:

### 1.    Class Certification

For settlement purposes only, the Parties have agreed to certify the Class defined as:

> All current and former holders of Affinity FCU consumer checking Accounts who, during the Class Period, were assessed at least one Retry NSF Fee. Excluded from the Settlement Class are Defendant, its parents, subsidiaries, affiliates, officers and directors; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

"Retry NSF Fees" mean insufficient funds or overdraft fee that was charged during the Class Period, for an Automated Clearing House (ACH) or check transaction that was (1) submitted by a merchant, (2) returned unpaid by Defendant due to insufficient funds, and (3) re-submitted by a merchant and returned or paid despite insufficient funds in the Account, as identified by the Parties based on review and analysis of Defendant's reasonably accessible data and information.

### 2.    Class Benefits

Class Counsel believes that the contemplated benefits addressed below adequately compensate Settlement Class Members for the harm they suffered and, in light of the risks of litigation, represent an excellent result for Settlement Class Members. (Joint Decl., ¶ 9.) According to Defendant's records, approximately 4,100 persons are in the Settlement Class. (*Id.*)

### a.    Settlement Fund

Within 14 days of Preliminary Approval by the Court, Defendant shall pay $500,000.00 in cash into the Escrow Account to create the Settlement Fund for the benefit of the Settlement Class. (Agreement, § 55.) The Settlement Fund includes (a) Class Counsels' fees and costs; (b)

4

any service award payment to the Class Representative; (c) costs associated with settlement administration and notice; and (d) payments to Settlement Class Members.

Thirty (30) days after the Effective Date of the Agreement, the Settlement Administrator will distribute the Net Settlement Fund to Settlement Class Members in accordance with the following payment calculation: (Net Settlement Fund / Total Retry Fees) x Total Number of Retry Fees charged to and paid by each Settlement Class Member = Settlement Class Member Payment. (Agreement, § 74.) For Settlement Class Members who are Current Account Holders at the time of the distribution of the Net Settlement Fund, a credit will be applied to their accounts. (*Id.* § 8(d)(iII)(1)(A).) For Settlement Class Members who are not able to receive a credit applied to their account as described above, the Settlement Administrator will mail them a check. (*Id.* § 8(d)(iII)(1)(B).) Any checks uncashed after one year will be paid to a *cy pres* recipient agreed to by the Parties and approved by the Court. (*Id.* §75.) In no event shall any portion of the Settlement Fund revert to Defendant.

### b.    Forgiveness of Uncollected Retry NSF Fees

The Agreement also provides that Defendant will forgive all Uncollected Retry NSF Fees, calculated to be at least $200,000, that were assessed but not paid. (Agreement, §§ 51, 75.)

### c.    Settlement Release

The Agreement includes a general release from the Class Representative and the Settlement Class Members of claims that arise out of and/or relate to the facts and claims alleged in the Complaint, and any other claims relating to Retry NSF Fees. (Agreement, § XII.)

#### d.    Class Notice

Notice will be provided by mail and email, as applicable, to all Settlement Class Members. (*Id.* § 65.) Defendant's business records will be analyzed to identify Settlement Class Members and their contact information. (*Id.*)

Within 60 calendar days of Preliminary Approval, the Settlement Administrator will send the Email Notice to Defendant's current members who have agreed to receive notices regarding their Accounts from Defendant electronically, using the most recent email addresses provided by Defendant. (*Id.* §66.) For any emails returned undeliverable, the Settlement Administrator will send a Postcard Notice. (*Id.*) For those Settlement Class Members who are former members of Defendant, or who have not agreed to receive electronic notices regarding their Accounts from Defendant, the Settlement Administrator will send a Postcard Notice by first class United States mail to the best available mailing addresses. (*Id.*) The Email Notice and Postcard Notice both inform members of the Class how they may obtain a copy of the Long Form Notice. (*Id.*)

The Postcard Notice and Email Notice each provide notice of Settlement Class Members' rights, including the right to exclude oneself from the settlement or to object to the fairness, adequacy, or reasonableness of the settlement. (*Id.* at Exhibit 1-2.) The Notice advises Settlement Class Members of Class Counsel's intent to seek attorney's fees of up to 33-1/3% of the Value of the Settlement, and the Class Representative's requested service award of $5,000.00. (*Id.*) The Notice also provides instructions for obtaining a copy of the Long Form Notice and the date and location of the Final Approval Hearing. (*Id.*)

The Long Form Notice will be posted on the settlement website and be available on request to the Settlement Administrator. (*Id.* at § 66) The Long Form Notice includes a summary of the case; a summary of Settlement Class Members' legal rights and options; answers to

frequently asked questions; a description of the Agreement and the settlement benefits; contact information for Counsel for Plaintiff and Counsel for Defendant; instructions on how to opt out of the Agreement; information about how to object to the settlement; a description of the attorney's fees that Class Counsel intend to apply for and the service award to be sought for the Class Representative; information about the Final Approval Hearing; and instructions on how to obtain a copy of the Agreement. (*Id.* at Exhibit 2.)

Because all notices will include this vital information, and because the information provided to the class members in the notice is structured in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known, the notices are more than sufficient. Further, the notices clearly explain that any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice of his or her intent to be excluded from the Settlement Class.

The notices also clearly explain that any member of the Settlement Class who wishes to object to or opt-out of the settlement must send a written statement of objection to the Settlement Administrator, prior to the Objection Deadline set by the Court. *Id., 71.* Settlement Class Members may also opt-out, and any opt-outs must be submitted to the Settlement Administrator by the Opt-out Deadline.

### e.    Service Award for Named Plaintiff and Attorneys' Fees and Costs

Subject to Court approval, Plaintiff will request a Service Award of up to $5,000; attorneys' fees of up to 33-1/3% of the Value of the Settlement; and reimbursement of reasonable costs and expenses in this litigation. (*Id.* at § 74(a), (b).) Defendant does not oppose these requests.

**LEGAL ARGUMENT**

The Court should preliminarily approve the proposed Settlement. The Settlement resulted from months of arm's length, hard-fought negotiations between the parties and their well-informed, well-experienced counsel and the assistance of an experienced mediator. The Settlement provides substantial monetary benefits considering the attendant risks of this litigation. The Settlement is considerably "fair, reasonable and adequate" under the Fed. R. Civ. P. 23 and applicable case law.

**I.    STANDARD OF REVIEW FOR PRELIMINARY APPROVAL**

As a matter of public policy, courts favor settlement of disputed claims, particularly in complex class actions, to encourage compromise and conserve judicial and private resources. *See*, *e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Computron Software, Inc., Sec. Litig.*, 6 F.Supp.2d 313, 317 (D.N.J. 1998) ("settlements of disputed claims, especially of complex class actions litigations, are favored by the courts").

Approval of a class action settlement involves a two-step process: (1) "preliminary approval" of the settlement; and (2) "final approval" of the settlement after notice and a hearing to consider its fairness. *See Mazon v. Wells Fargo Bank, N.A.*, 2011 WL 6257149, *1 (D.N.J. Dec. 14, 2011); *Jones v. Commerce Bancorp Inc.*, No. 05-600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2006). *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2008). The purpose of the preliminary approval process is not to determine ultimately whether the settlement is fair, reasonable and adequate. *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa.

2007).  Rather, a court should grant preliminary approval of a settlement where, as here, "the proposed settlement is the result of the parties good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Prof'l Billing & Mgm't Servs., Inc.*, No. 06-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (citation omitted); *Jones*, 2007 WL 2085357, at *2 (preliminary approval is granted "unless a proposed settlement is obviously deficient."); *In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminary approval granted if it falls "within the range of possible approval.").  Indeed, the Third Circuit affords an initial presumption of fairness to a class action settlement under preliminary review when the court finds that: (1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) [in the context of final approval of a settlement] only a small fraction of the class objected.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir 2001); *Warfarin Sodium*, 391 F.3d at 535; *Smith*, 2007 WL 4191749, at *1.

The Plaintiff and Class Counsel respectfully submit that an analysis of these factors strongly supports preliminary approval of the proposed Settlement.

## II.    THE PROPOSED SETTLEMENT SATISFIES THE PRELIMINARY FAIRNESS STANDARD

Class Counsel litigated this case and negotiated the proposed Settlement possessing extensive knowledge of and experience in prosecuting class actions in courts throughout the United States including this one. Joint Decl., at ¶ 10.  In their view, and though the Court denied Defendant's Motion to Dismiss, in part, in this action, there remained a strong measure of unpredictability in pursuing this Action through contested class certification, summary judgment and trial that supports the fairness of the proposed Settlement. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued

litigation and delay. Plaintiff believes her claims have merit and she would prevail if the case proceeded to trial. However, Affinity FCU argues that Plaintiff's claims are unfounded, denies any potential liability and disputes Plaintiff's ability to certify a class, and up to the point of settlement was willing to litigate those claims vigorously. *Id.* ¶ 11. The Parties concluded the settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with further class certification discovery, a contested class certification motion, possible interlocutory review of the class certification ruling, completing merits discovery, pretrial motion practice, trial, and finally appellate review. *Id.* ¶ 12.

A.      **The Proposed Settlement Resulted from Arm's-Length Negotiations**

The proposed Settlement resulted from good faith, arm's length negotiations between the parties and supervised by a well-respected mediator, Judge Cavanaugh (Ret.).  Negotiations were hard-fought with the parties raising and arguing numerous factual and legal issues, including class certification, class ascertainability and the Plaintiff's and Class's measure of damages. When the parties settled, Plaintiff were prepared to simultaneously continue discovery and file their Motion for Class Certification.  Joint Decl., ¶ 13.

B.      **The Discovery Produced in this Matter Was Sufficient for the Parties to Understand the Litigation's Facts and Legal Issues**

Settlement discussions did not commence until the Parties had thoroughly investigated the potential range of damages at issue in the case. Joint Decl., ¶ 14. The hard-fought negotiation during the mediation then required yet more confirmatory data analysis.  *Id*., ¶ 15.  Separate and apart from the damages discovery, Class Counsel propounded several requests for documents and interrogatories.  Counsel consulted with their expert regarding the impact of this discovery. Therefore, the Plaintiff and Class Counsel "conducted sufficient discovery to estimate the merits and value of the Plaintiff' case . . . and reach a reasonable settlement."  *Gates v. Rohm and Haas*

*Co.,* 248 F.R.D. 434, 444 (E.D. Pa. 2008).

The proposed Settlement recovery equates to 100% of the most likely recoverable damages. Joint Decl., ¶ 16. This far exceeds the range of reasonableness for class action litigation in this Circuit and elsewhere. *See, e.g., Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages); *Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members).

With this Settlement, Plaintiff has achieved her desired goal of compensating Settlement Class Members for Retry NSF Fees during the Class Period. There was a substantial risk she would not achieve that result. Before Settlement, Affinity FCU sought dismissal. Although this Court denied that motion in part, there was no certainty that Plaintiff would prevail. At the time of Settlement, Plaintiff still had to complete discovery, move for class certification, face a potential interlocutory appeal of class certification, engage in dispositive motion practice and

11

trial, and a potential post-trial appeal. Joint Decl. ¶ 17. And even if Plaintiff succeeded in those steps, as noted above, the measure of damages was uncertain, given Affinity FCU's defenses. While Plaintiff partially prevailed at the motion to dismiss stage, there is no certainty that the Court would grant certification, that Plaintiff would survive summary judgment, win at trial, or win on their damages theory. *Id.* ¶ 18. Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement reached with Affinity FCU outweighs the gamble of continued litigation. *Id.* ¶ 19.

### C.    Counsel Are Highly Experienced in Class Action Litigation

Class action litigation attorneys with experience in the relevant legal and factual issues represented the Parties and negotiated with the assistance of a mediator. Joint Decl. ¶ 20. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions cases, as described above. Class Counsel's experience enabled counsel to accurately evaluate the strengths and weaknesses of Plaintiff's claims and the value of the case. *Id.* ¶ 21. Similarly, seasoned Defense Counsel included a well-respected defense firm that vigorously defended Affinity FCU against Plaintiff's allegations and have substantial experience in class action litigation.

Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998). "Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations." *In re American Family Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010).

## III.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Class certification under Rule 23 has two primary components. The party seeking class certification must first establish the four requirements of Rule 23(a): "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')." *Warfarin Sodium*, 391 F.3d at 527. Second, the Court also must find that the proposed Class satisfies Fed. R. Civ. P. 23(b). In the present case, the Plaintiff seek certification under Rule 23(b)(3), which provides "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23. As discussed below, the proposed Settlement Class meets all of the Rule 23 requirements.

### A.   The Proposed Class is Too Numerous for Joinder

"To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Here, Plaintiff easily establishes the numerosity requirement. Numerosity is satisfied because the Settlement Class consists of more than four thousand accountholders, and joinder of all such persons is impracticable. Joint Decl. ¶ __. Therefore, numerosity is easily satisfied. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40 . . . .").

13

**B.**    **There Are Numerous Questions of Law and Fact Common to the Class**

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other."  *Warfarin Sodium*, 391 F.3d at 527-28.   "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met."  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).   Here, multiple questions of law and fact—centering on Affinity FCU's use of the same account agreements and disclosures and its alleged systematic practice of assessing Retry NSF Fees—are common to the Settlement Class and would generate common answers to the claims' viability. Joint Decl. ¶ 23.  Accordingly, commonality is satisfied.

**C.**    **The Class Representatives' Claims are Typical of the Absent Settlement Class Members**

For similar reasons, Plaintiff's claims are reasonably coextensive with those of absent Settlement Class members, satisfying Rule 23(a)(3). Under Rule 23(a)(3), the court must determine whether "the named plaintiffs' individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *Johnston v. HBO Film Mgm't., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  Typicality does not require that all class members share identical claims.  *Id.*  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). Because the claims arise from the same alleged conduct, the typicality requirement is met.

**D.**    **The Plaintiff and Class Counsel Have and Will    Continue to Adequately Represent the Class**

The adequacy requirement has two components intended to ensure that the absent

14

Settlement Class Members' interests are fully represented: (1) the named plaintiffs' interests must be sufficiently aligned with the interests of the absentees, and (2) the plaintiffs' counsel must be qualified to represent the class. *In re General Motors Corp Pick-Up Truck*, 55 F.3d 768, 800 (3d. Cir. 1995). In addressing the adequacy of the proposed class representative, the court must examine whether the "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185.

Here, Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because she and the absent Settlement Class members have the same interest in the relief the Settlement affords. The absent members of the Settlement Class have no diverging interests. Joint Decl. ¶ 24. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *Id.* ¶ 25. Class Counsel devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.* ¶ 26.

### E.     The Rule 23(b)(3) Factors Are Met

Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed R. Civ. P. 23(b)(3)(1). The "predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. . . .'" *Sullivan v. D.B. Investments, Inc.,* 667 F.3d 273, 297 (3d Cir. 2011) (citations and additional quotation marks omitted). Predominance is "satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'" *Id.* at 299 (internal citation omitted).

Here, this factor is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible individual issues. Joint Decl. ¶ 27. For

example, each Settlement Class Member's relationship with Affinity FCU arises from the same account agreement and disclosures, and each were charged the same Retry NSF Fees. *Id.* ¶ 28. Further, resolving thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Settlement Class should be certified.

In addition to predominance, Rule 23(b)(3) also requires a finding that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23. Here, absent class certification, millions of individual Settlement Class Members would be forced to spend large sums of money developing and proving the same issues of liability and damages repeatedly. *See Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (observing that judicial economy and resolution of common issues in one action outweighs repeated proceedings). Notably, since this lawsuit's inception, no individuals, other than the Plaintiff, have filed suit against Affinity FCU alleging the same theory of liability. Therefore, based upon the above, a class action is the superior method of settling the Plaintiff' and the Class' common claims against Affinity FCU.

## IV.    THE PROPOSED NOTICE TO THE CLASS SATISFIES ALL APPLICABLE REQUIREMENTS INCLUDING DUE PROCESS

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co*., 339 U.S. 306, 314 (1950). "Rule 23 . . . requires

16

that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311.

The proposed Notice Program satisfies due process and Rule 23. As discussed above, the Notice Program provides for direct notice, including Email Notice and Mail Notice, and the Long-Form Notice available to Settlement Class Members. *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort). Additionally, the Settlement calls for the creation and use of a Settlement Website to be maintained by an experienced Settlement Administrator and an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries and answer questions.

Based upon the above, the notice program represents the "best notice practicable under the circumstances," as it includes individual notice to all members of the Class "who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Consequently, Plaintiff respectfully request that the Court approve the proposed notice program.

## V.    NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT

The Class Action Fairness Act ("CAFA") requires that settling defendants give notice of a proposed class action settlement to certain designated officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). Affinity FCU will serve the CAFA notice. Agreement, Para. 69.

## VI.    THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates, such as the time to disseminate notice or to opt-out or object, are based on when Preliminary Approval of the Settlement is granted, and when the Final

17

Approval Hearing is scheduled. The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| EVENT | Proposed Due Date |
|---|---|
| Complete Email Notice and Mail Notice | 60 days after Preliminary Approval |
| Opt-Out Deadline | 60 days after the Notice Deadline |
| Objection Deadline | 60 days after the Notice Deadline |
| Plaintiff's Motion for Final Approval | 90 days after the Notice Deadline |
| Final Approval Hearing | APPROX. 180 DAYS AFTER PRELIM. APPROVAL |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) conditionally certify the Settlement Class, (2) appoint Plaintiff as Class Representatives, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Program and direct that notice be provided to the Settlement Class members, (6) approve and order the opt-out and objection procedures set forth in the Agreement, (7) stay all deadlines in the Action against Affinity FCU pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is attached for the Court's convenience.

Dated: December 19, 2022                    Respectfully submitted,

WILENTZ, GOLDMAN & SPITZER, P.A.

By:_____/s/ Kevin P. Roddy_____
    KEVIN P. RODDY
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
E-mail:  kroddy@wilentz.com

THE KICK LAW FIRM, APC
TARAS KICK*
815 Moraga Drive
Los Angeles, CA  90049
Telephone:  (310) 395-2988
E-mail:  taras@kicklawfirm.com

18

KALIEL PLLC
JEFFREY KALIEL*
1875 Connecticut Ave. N.W., 10th Floor
Washington, DC  20009
Telephone:  (202) 350-4783
E-mail:  jkaliel@kalielpllc.com

* Counsel Admitted Pro Hac Vice (ECF Nos. 20 & 40)

Attorneys for Plaintiff and the Members of the
Proposed Class(es)

19